## BUSSELL *v.* BISHOP.

Under the pleadings and the evidence the court did not err, on the interlocutory hearing, in granting a temporary injunction and appointing a receiver.

No. 2487. DECEMBER 16, 1921.

Injunction and receivership. Before Judge Eve. Irwin superior court. October 2, 1920.

The parties to this suit entered into a contract whereby the landowner was to furnish the land and fertilizer and perhaps the seed, and the other party was to furnish the stock and tools and to perform the labor necessary in the cultivation and gathering of the crops, and they were to divide the crops when gathered. The crops were planted and were being cultivated in accordance with the terms of the contract. It was alleged: that on the 29th day of July Lee Bussell, the defendant, organized a mob, and, undertaking to disguise himself, planned and plotted to either kill the plaintiff or drive him away from his home and from the property held by him and which rightly and justly belonged to him. In accordance with this plan the defendant, in company with four other named men who lived on the farm of the defendant, drove at night within four hundred yards of the plaintiff's home, and,

stopping the car, the defendant had J. B. Gaskins to go up to plaintiff's home and bring him down the road under the pretense that Gaskins, with his wife and small children, were in the ditch with an automobile and needed the plaintiff to assist them in getting out. The defendant and his associates were concealed in bushes near the road at a branch, the defendant having a white cloth or handkerchief tied over his face as a disguise or mask; and immediately upon the plaintiff reaching the point in the road at which the defendant and his confederates had concealed themselves, the defendant so masked stepped out and, pointing a shotgun at the plaintiff, ordered him to throw up his hands, and proceeded to place a sheet over his head and to beat him upon the head with some kind of instrument. Plaintiff was informed that he was going to be killed, and, having but a moment to live, he begged to be allowed to pray, and while down upon his knees the defendant beat him over the head with all his might and power. Plaintiff was also shot twice in the head by some one in the crowd, and a third shot missed him as he broke away and ran. The defendant denied participation in the proceeding, and tried to create the impression that it was the work of other parties; and having failed to kill plaintiff and get possession of the joint property of plaintiff and defendant and be relieved from the payment of his debt to plaintiff, and to retain plaintiff's watch and chain, defendant sought to frighten plaintiff by creating the impression in his mind that he was likely to be killed should he undertake to remain on the farm and in possession of the property. Plaintiff is satisfied that he saved his life only by flight on the night referred to, and his flight was at great peril to himself. He has a large family and they are all working people, and with their help he will be able to perform all the labor about gathering the various crops; but notwithstanding this, the defendant is insisting upon hiring laborers and putting them in the crop and gathering it and charging this expense to plaintiff. Plaintiff is in actual fear of bodily harm from defendant if he has to deal with him in the gathering of the crops and dividing them, because of the fact that he is a negro and the defendant a white man; and plaintiff is old, one-armed, and suffering under the serious disability of the wounds caused by the shots and licks inflicted upon him by the defendant and his confederates. There are reputable

white men who will agree to take charge of the crops and have him gather them, and deal with the defendant in the settlement; and plaintiff is willing, if the court should think proper, for all of the costs of the receivership proceeding to be taken from his interest in the property. The prayer is that a receiver be appointed to take charge of the property and to hold the same subject to the order of the court, and that the crops be delivered and the plaintiff have his part, and a complete adjustment of the accounts between plaintiff and defendant. The court granted a temporary restraining order, and appointed a temporary receiver to harvest the crops by letting the plaintiff and his family perform the labor thereof. On the interlocutory hearing W. H. Cofield was continued as receiver. To this judgment the defendant excepted.

*J. M. Lee* and *Quincey & Rice,* for plaintiff in error.

*Homer Oxford* and *Walter M. Rogers,* contra.

HILL, J. (After stating the foregoing facts.) The relation between the parties was that of landlord and cropper. The relation of landlord and cropper is really the relation of employer and employee. Ordinarily the employer may discharge the employee; and if the employer is solvent the employee is not entitled to an injunction against the employer for a breach of the contract, in the absence of other equitable grounds. It has in effect been held by this court that where the relation of landlord and cropper exists, the landlord can not be enjoined from taking charge of the crops, in the absence of an allegation of insolvency, the cropper having an adequate remedy at law. *Nicholson* v. *Cook,* 76 *Ga.* 24. It will be noted, however, in this case that the landlord did not elect to breach his contract with his cropper and suffer the legal consequences thereof; but he sought to frighten the cropper and to compel him through fright to abandon his contract. The landlord resorted to violence, in short, to mob violence, to effectuate his intent and purpose, according to the allegations of the cropper's petition, and to the evidence offered by the cropper in support thereof. While the solvent landlord may not be enjoined from breaching his contract with his cropper, and from entering into and taking possession of the crop, though wrongfully, the solvent landlord has no more right to compel the cropper to abandon his crop, and to flee in fear from the premises, than such landlord has by similar means to compel any other person to

breach his contract, and to abandon his work. It therefore seems to us that the judge was authorized, under the peculiar facts of this case, to issue an injunction against the landlord, though solvent, restraining him from going upon and taking charge of the crops by the means and in the manner alleged in the petition. That is to say, a court of equity may enjoin a landlord, though solvent, from attempting by mob violence to intimidate his cropper in order to compel him to breach his contract and to abandon his crop after the crop is practically matured. Not only did the landlord and his friends, according to the allegations of the plaintiff, assault the plaintiff, but the landlord thereafter and on several occasions drove his car at night up to and near the house in which plaintiff lived, and conducted himself in such manner as to lead to a reasonable inference that a further assault upon the plaintiff was imminent unless plaintiff should leave the premises. For the reasons already indicated, we can not hold that the judge abused his discretion in enjoining the defendant from interfering with the cropper, and in appointing a receiver to supervise the harvesting of the crop. While the receiver was appointed with the usual powers of a receiver, it nevertheless appears that the receiver was authorized to permit the plaintiff himself to gather the crops, but under the supervision of the receiver.

In addition to the facts peculiar to this case already pointed out, attention is called to the further fact that the relation of landlord and cropper existed between the plaintiff and defendant for the years 1918 and 1919, and that the entire crops made during the year were turned over to the defendant, and the plaintiff had not been able to procure from the defendant any settlement of his account, or any settlement. In other words, under the allegations of plaintiff's petition and in view of the evidence offered in support thereof, it appears that the plaintiff can not adjust all of his differences with the defendant in one action for the breach of the contract for 1920. An accounting is necessary in order to settle the account between plaintiff and defendant for the previous years. It would seem therefore that equity should also interpose for the purpose of avoiding a multiplicity of suits.

*Judgment affirmed. All the Justices concur.*